**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **COURTNEY S. WALLACE, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:14-17900** |
| | ) | |
| **MCDOWELL COUNTY COMMISSION,** | ) | |
| ***et al.*****,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following Motions: (1) Defendants Jones-Fouche and Walker's Motion to Dismiss (Document No. 13.), filed July 25, 2014; and (2) Defendant Rubenstein and the West Virginia Division of Corrections' Motion to Dismiss (Document No. 15.), also filed on July 25, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 18.) Plaintiff filed his Response on August 11, 2014. (Document No. 19.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants Rubenstein and the West Virginia Division of Corrections' Motion to Dismiss (Document No. 15.) should be granted and Defendants Jones-Fouche and Walker's Motion to Dismiss (Document No. 13.) should be granted in part and denied in part. To the extent Defendant Walker seeks dismissal, her Motion to Dismiss should be granted. To the extent Defendant Jones-Fouche seeks dismissal of Plaintiff's medical negligence claim, her

Motion to Dismiss should be granted. To the extent Defendant Jones-Fouche seeks dismissal of Plaintiff's deliberate indifference claim, her Motion to Dismiss should be denied.

## PROCEDURAL BACKGROUND

On June 9, 2014, Plaintiff filed his Complaint seeking relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) In his Complaint, Plaintiff names the following as Defendants: (1) McDowell County Commission; (2) McDowell County Correctional Center; (3) Dennis Dingus, Warden of McDowell County Corrections; (4) Dr. Kimberly Jones; (5) Ms. April Walker, R.N; and (6) Jim Rubenstein, Commissioner of Corrections. (Document No. 1, p. 3.) Plaintiff alleges that Defendants acted with deliberate indifference in providing medical treatment for his back and hip injury and his heart condition. (Id., pp. 4 - 10.) Plaintiff claims that on April 4, 2013, he injured back and hip when he slipped in some milk that had been spilled on the floor at McDowell County Correctional Center ["MCCC"]. (Id., p. 5.) Plaintiff explains that his "right leg went out from under [him], causing [his] left hip to make a loud popping sound as pain traveled up [his] back and across [his] left hip and into [his] groin." (Id.) Plaintiff states that he "was able to catch [himself] on the block of the wall as otherwise [he] would have hit the floor." (Id.) Plaintiff claims that he informed Lt. Jackson of his injury and requested that an incident report be filed. (Id.) Plaintiff alleges that Officer Fowler told Lt. Jackson that "the spilled milk had been there all day." (Id.) Although Plaintiff acknowledges that Nurse Harris was called, Plaintiff complains that Nurse Harris failed to examine him. (Id.) Plaintiff states that Nurse Harris told him he had pulled a muscle, gave him three Tylenols, and "put a sick call in to see a doctor." (Id.) Plaintiff then states that Lt. Jackson questioned him concerning his

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

altered shoes. (Id., p. 6.) Plaintiff explains that due to swelling in his feet, the straps of his shoes continuously break. (Id.) Plaintiff states that he "did take some string and put it in place of the straps so that [his] feet would not break out of the shoes." (Id.)

Plaintiff states that he was questioned by Mrs. Cochran, Mrs. Bowman, and Mr. Cochran on April 5, 2013, concerning the incident and "who authorized [him] to wear the altered shoes." (Id.) Plaintiff explains he reported to Medical the same day "to get something for the pain and to see if [he] could be sent to the hospital and was told that [he] would be seeing the doctor the next day and that they had [his] sick call form so they gave [him] three Tylenols and sent [him] back to his cell." (Id.) Plaintiff was evaluated by Dr. Jones on April 6, 2013, who prescribed Tylenol three times a day. (Id., p. 7.) Plaintiff alleges that he went back to Medical on April 7, 2013, due to pain "and was told that Dr. Jones was aware of [his] situation and that if the pain continued that they would call the doctor." (Id.) Plaintiff states that he was again evaluated by Dr. Jones on April 16, 2013, who ordered an x-ray. (Id.) Plaintiff claims that he subsequently reported to Medical to get the results of his x-ray, but Nurse Ross and Dr. Jones could not find the x-ray report. (Id.) Plaintiff states that Dr. Jones then ordered that he be sent to the Welch Hospital for an x-ray. (Id.) Plaintiff acknowledges that he was transported to the Welch Hospital and his x-ray was performed. (Id.) Plaintiff, however, alleges that the doctor at Welch Hospital informed Plaintiff that he "could not take Tylenol or Motrin the way [he] was taking it because it would mess-up [his] liver." (Id., pp. 7 - 8.) Plaintiff asserts that the doctor prescribed Naproxen twice a day and informed Plaintiff that "he wanted to see [him] back soon for more tests and x-rays after he talked to some other doctors." (Id., p. 7.) Plaintiff states that he was never taken back for his follow-up. (Id.) Plaintiff further complains that when he reported to Medical for his new medication, he was told "there was no order for any new

medicine and that [he] only had what Dr. Jones had ordered." (Id.) Plaintiff contends that Nurse Murphy told him that she would "check on it for [him]." (Id.) Plaintiff complains that he did not receive his medication until July 10, 2013, after having to file grievances. (Id.) Plaintiff explains that he ran out of Naproxen in September, 2013, and he was given Tylenol when he requested a refill. (Id.) Plaintiff states that the nurse informed him that the Naproxen was on order and Plaintiff should take Tylenol until the Naproxen arrived. (Id.) Plaintiff alleges that due to his continuous pain, he was again evaluated by Dr. Jones. (Id.) Plaintiff states that Dr. Jones "sent [him] back to see the Doctor at Welch Hospital who checked [him] again and said that he wanted to see [him] back because it looked like [Plaintiff] might have a pinched nerve in [his] lower back." (Id., p. 9.) Plaintiff states that he has "never been taken back as of this day." (Id.)

Next, Plaintiff complains that Defendants provided inadequate treatment for his heart condition. (Id., pp. 10 - 11.) Plaintiff states that he had a heart attack on October 7, 2009, and that he continues to have sharp pains across his chest and down his left arm. (Id., p. 10.) Plaintiff acknowledges that Dr. Jones evaluated him concerning the above complaint and instructed him that he should be on medication. (Id.) Plaintiff acknowledges that an EKG was conducted when he reported chest pain. (Id.) Plaintiff states that he was examined by Dr. Jones in March, 2014, and "she said she was going to send [him] out to a heart doctor and the doctor about [his] back." (Id.) Plaintiff acknowledges that he was evaluated by the heart doctor on April, 2014, who informed Plaintiff that more tests were necessary. (Id.) Plaintiff complains that the additional tests have not been conducted. (Id.) As relief, Plaintiff requests to "be paid for all the mental stress and additional health problems this has cause [him], and to be moved to another Correctional Facility in a different county that is run by the West Virginia DOC, not a County Commission." (Id., p. 11.)

By Order entered on June 10, 2014, the undersigned directed Plaintiff to either pay the filing and administrative fee totaling $400 or file an Application to Proceed *in Forma Pauperis*. (Document No. 3.) On June 17, 2014, Plaintiff filed his Application to Proceed *in Forma Pauperis*. (Document No. 4.) By Order entered on July 2, 2014, the undersigned granted Plaintiff's Application to Proceed *in Forma Pauperis* and ordered the Clerk to issue a Summons requiring Defendants to answer or otherwise respond to Plaintiff's claim. (Document No. 5.) On July 21, 2014, Plaintiff filed a Motion to Amend his Complaint. (Document No. 10.) Specifically, Plaintiff requests that the name of Defendant Dr. Kimberly Jones be amended to Dr. Kimberly Jones-Fouche. (Id.) By Order entered on July 23, 2014, the undersigned granted Plaintiff's Motion to Amend. (Document No. 11.)

On July 25, 2014, Defendants McDowell County Commission, McDowell County Correctional Center, and Dennis Dingus filed their Answer to Plaintiff's Complaint. (Document No. 12.) Also, on July 25, 2014, Defendants Jones-Fouche and Walker filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 13 and 14.) Defendants Jones-Fouche and Walker contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "The Plaintiff's complaint must be dismissed because this Court lacks subject matter jurisdiction over Plaintiff's claims under the West Virginia Medical Professional Liability Act" (Document No. 14, pp. 4 - 6.); and (2) "The Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because the Plaintiff has not alleged facts sufficient to demonstrate a constitutional violation" (Id., pp. 7 - 10.)

Defendants West Virginia Division of Corrections ["WVDOC"] and Rubenstein filed their Motion to Dismiss and Memorandum in Support on July 25, 2014. (Document Nos. 15 and 16.)

Defendants WVDOC and Rubenstein contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff has not set forth sufficient facts to support a claim of a violation of his Eighth Amendment Constitutional Rights" (Document No. 16, pp. 3 - 6.); (2) "The Plaintiff cannot advance liability upon this Defendant under a theory of *respondeat superior*" (Id., pp. 6 - 7.); (3) "Because neither Defendant WVDOC or Defendant Rubenstein own or operate the McDowell County Correctional Center, they owe no duty to the Plaintiff under the theory of premises liability" (Id., pp. 8 - 10.); and (4) Defendants are entitled to qualified immunity (Id., pp. 10 - 11.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 28, 2014, advising him of the right to file a response to the Defendants Jones-Fouche, Walker, Rubenstein, and WVDOC's Motions to Dismiss. (Document No. 18.) Plaintiff filed his Response in Opposition on August 11, 2014. (Document No. 19.) Defendants Rubenstein and WVDOC filed their Reply on August 20, 2014. (Document No. 21.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**DISCUSSION**

**1. Medical Negligence Claim:**

In their Motion to Dismiss, Defendants Jones-Fouche and Walker argue that Plaintiff's claim of medical negligence should be dismissed based on his failure to comply with the West Virginia Medical Professional Liability Act. (Document No. 14, pp. 4 - 6.) Defendants state that "Plaintiff failed to provide pre-suit Notice of a Claim and failed to submit a Screening Certificate of Merit." (Id., p. 6.) Defendants, therefore, assert that Plaintiff's allegations of medical malpractice must be dismissed. (Id.) Plaintiff's Response fails to address the above argument. (Document No. 19.)

Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[2] Compliance with West Virginia Code

[2] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in

§ 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6 (c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

The undersigned, therefore, will consider whether expert testimony is necessary in the instant case. Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The

---

litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6 (c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished blood flow and subsequent Necrosis and infection." Id. at 858.

Unlike the facts in Johnson, Plaintiff's allegations of negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); also see Giambalvo v. United States, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant

case, Plaintiff contends that Defendants failed to timely order x-rays of his back and hip, failed to provide appropriate medication for his heart condition and the pinched nerve in his back, and failed to schedule necessary follow-up appointments with specialists concerning his heart condition and the pinched nerve in his back. The undersigned finds that what constitutes timely treatment, risk factors, symptoms, and appropriate treatment options and medications for the above conditions are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6 (c). The undersigned, therefore, recommends that the Defendants Jones-Fouche and Walkers' Motion to Dismiss be granted as to Plaintiff's claim of medical negligence.

**2. Section 1983 Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

**A. Improper Parties:**

Plaintiff names McDowell County Correctional Center and the WVDOC as Defendants. Section 1983 claims, however, must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th

Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983); also see Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989)(Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment). Accordingly, the undersigned finds that Plaintiff's constitutional claims against McDowell County Correctional Center and the WVDOC must be dismissed because they are not "persons" as required by Section 1983.

**B. Eighth Amendment:**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that

inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir.

1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") The touchstone is the health of the inmate. Plaintiff in this case must therefore allege in the first place and eventually establish a "sufficiently serious" deprivation of medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim.

To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. An inmate may satisfy the subjective component of standard by showing that prison officials' delay in providing medical treatment caused unnecessary pain or the worsening of his condition. Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990)("Failure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs."); Cameron v. Sarraf, 128 F.Supp.2d 906, 911 - 912 (E.D.Va. 2000)("Yet, it is equally clear that mere negligence or delay is not sufficient to establish deliberate indifference.").

***I. Defendant Walker.***

The allegations contained in Plaintiff's Complaint do not present a claim of constitutional magnitude against Defendant Walker. Plaintiff alleges that he filed a grievance complaining that he was not properly receiving his pain medication, which was prescribed by an outside physician.

Plaintiff contends that Defendant Walker incorrectly responded that Plaintiff "had never been seen by an outside doctor at Welch Hospital without checking her records to find the truth." The undersigned finds that Plaintiff's mere allegation that Defendant Walker incorrectly responded to his grievance concerning his pain medication is insufficient to state a claim under the Eighth Amendment. An assertion of mere negligent conduct or malpractice is not enough to constitute an Eighth Amendment violation. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Although inmates are clearly entitled to reasonable medical care, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs" to establish a claim under the Eighth Amendment. Estelle, 429 U.S. at 105, 97 S.Ct. at 286. The undersigned first finds that under an objective standard, Plaintiff fails to allege a "sufficiently serious" deprivation of medical care resulting in a "serious or significant physical or mental injury." Plaintiff merely alleges that Defendant Walker incorrectly responded to his grievance filed on July 8, 2013. (Document No. 1.) Plaintiff, however, acknowledges that he received his pain medication on July 10, 2013, after filing a grievance with the Warden. (Id., p. 8.) Plaintiff does not allege that he was at risk of death or permanent disability, or suffered continuous severe pain, due to the two-day delay in providing pain medication. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendant Walker knew of and disregarded an excessive risk to his health or safety. Further, there is no indication in Plaintiff's Complaint that Defendant Walker was aware of facts from which an inference could be drawn that a substantial risk of serious harm

existed, or that Defendant Walker drew that inference. Accordingly, the undersigned recommends that Defendant Walker's Motion to Dismiss should be granted.

***ii. Defendant Jones-Fouche.***

Construing Plaintiff's complaint liberally, the Court finds that Plaintiff's allegations against Defendant Jones-Fouche provide sufficient factual detail to plausibly demonstrate a claim for deliberate indifference. Plaintiff alleges that Defendant Jones-Fouche acted with deliberate indifference in diagnosing and providing treatment for his back and hip injury and his heart condition. Concerning his back and hip injury, Plaintiff appears to argue that Defendant Jones-Fouche failed to provide appropriate follow-up care after his evaluation by an outside physician. Specifically, Plaintiff states that the outside physician determined that Plaintiff possibly suffered from a pinched nerve in his lower back and recommendation further evaluation. Plaintiff indicates that even though Defendant Jones-Fouche initially referred him to the outside physician for evaluation, she failed to follow the outside physician's recommendation for further evaluation. Concerning his heart condition, Plaintiff argues that Defendant Jones-Fouche failed to ensure that Plaintiff received necessary medication and failed to send him for his follow-up appointments with the outside physician. Plaintiff further states that even though Defendant Jones-Fouche determined that Plaintiff should be on medication for his heart condition, she has failed to ensure that he received the medication. Plaintiff alleges that Defendant Jones-Fouche is aware of his continued chest pain, but fails to follow the recommendation of an outside physician that additional testing be conducted. Accordingly, the undersigned recommendations that Defendant Jones-Fouche's Motion to Dismiss be denied as to Plaintiff's claim of deliberate indifference.

***iii. Defendant Rubenstein.***

The undersigned finds that Plaintiff's claim against Defendant Rubenstein is improperly raised under the doctrine of *respondeat superior*. Plaintiff complains that medical staff at MCCC failed to provide appropriate medical care for his back and hip injury and heart condition. Thus, Plaintiff appears to allege that Defendant Rubenstein failed to ensure that medical staff provided Plaintiff adequate medical treatment. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

In the instant case, Plaintiff fails to allege how Defendant Rubenstein was personally involved in violating Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendant Rubenstein violated his constitutional rights with respect to his failure to supervise employees. Plaintiff, however, fails to allege any personal involvement by Defendant Rubenstein. There is no indication that Defendant Rubenstein was aware that Plaintiff was allegedly receiving inadequate medical treatment, but failed to take any action. Thus, there is no allegation that Defendant Rubenstein was personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the medical staffs' conduct. Moreover, the dismissal of a non-medical defendant is appropriate where the defendant's sole involvement is the denial of an administrative remedy request. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state a *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Accordingly, Plaintiff has improperly raised his claim against Defendant Rubenstein under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore recommends that Plaintiff's Section 1983 claim against Defendant

Rubenstein be dismissed.[3]

**3. Premise Liability Claim:**

"To state a claim for negligence, the plaintiff must allege the existence of a duty, the defendant's breach of that duty, causation, and damages." NSBC Bank USA, National Association v. Resh, 2013 WL 312871, * 11 (S.D.W.Va. Jan. 25, 2013); also see Strahin v. Cleavenger, 216 W.Va. 175, 603 S.E.2d 197, 205 (2004)("To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries to the plaintiff.")

In their Motion to Dismiss, Defendants WVDOC and Rubenstein argue that Plaintiff has failed to state a claim of premises liability against them. (Document No. 16, pp. 8 - 10.) Defendants argues that "because neither Defendant WVDOC nor Defendant Rubenstein own or operate the McDowell County Correctional Center, they owe no duty to the Plaintiff under a theory of premises liability." (Id.) First, Defendants WVDOC and Rubenstein state that they have no ownership interest in the McDowell County Correctional Center. (Id., p. 9.) Citing West Virginia Code § 25-1-3(b), Defendant Rubenstein explains that he "has the ability to contract with McDowell County Commission to house and incarcerate inmates at the MCCC so long as it is consistent with all requirements and standards that govern the WVDOC." (Id.) Defendants WVDOC and Rubenstein state that "MCCC is a separate entity from the WVDOC which the WVDOC does not have a ownership interest." (Id.) Defendants WVDOC and Rubenstein note that "[t]he sole owner and operator of the MCCC is the McDowell County Commission." (Id.) Second, Defendants WVDOC

[3] The undersigned further notes that Plaintiff's allegation that Defendant was negligent is insufficient to establish deliberate indifference.

and Rubenstein contend that they did not exercise "control over the direction or task management of the staff of the MCCC." (Id.) Specifically, Defendants state that "it was not the job of Defendants WVDOC and Rubenstein to oversee the cleaning duties of the janitorial staff of MCCC to ensure that the alleged 'spoiled' or spilled milk was mopped up in the visitation area." (Id., p. 10.) Defendants WVDOC and Rubenstein, therefore, contend that they "did not owe a duty to the Plaintiff to ensure that the premises were clear of any items, objects, or liquids that could result in the Plaintiff's fall and that duty belonged solely to the McDowell County Commission and its employees in the MCCC." (Id.)

In Response, Plaintiff contends that his claim against Defendants WVDOC and Rubenstein should not be dismissed because "McDowell County Correctional Center is not under contract with Defendant Jim Rubenstein nor the WVDOC." (Document No. 19.) In support Plaintiff states that MCCC "houses WVDOC inmates, Regional Jail inmates, and County inmates." (Id.) Plaintiff appears to acknowledge that Stevens Correctional Center is under contract with the WVDOC, but disputes a contract involving the McDowell County Correctional Center. (Id.) Plaintiff further states that MCCC "is tied to the McDowell County Courthouse for in which has a bad black mold infection problem."[4] (Id.)

In Reply, Defendants WVDOC and Rubenstein first notes that "Plaintiff's Affidavit contains a narrative regarding alleged various contracts between the West Virginia Division of Corrections, the McDowell County Commission and/or the West Virginia Regional Jail and Correctional Facility Authority." (Document No. 21.) Defendants contend that "[t]he veracity of the various allegations

---

[4] Plaintiff's arguments concerning black bold are unrelated to the allegations set forth in his Complaint.

are of absolutely no importance with regard to the instant matter as it does not address the grounds alleged by these Defendants for their dismissal." (Id.)

Construing Plaintiff's complaint liberally, his allegations do not state the essential elements of a negligence action and fail to provide sufficient factual detail to plausibly demonstrate a claim for relief against Defendants WVDOC and Rubenstein. Concerning the Plaintiff's claim of premises liability against Defendants WVDOC and Rubenstein, Plaintiff fails to allege factual content that allows the Court to draw the reasonable inference that the foregoing Defendants are liable for the alleged misconduct. Specifically, Plaintiff fails to allege that Defendants WVDOC and Rubenstein are the owners or occupants of the premises. See Doe v. Wal-Mart Stores, Inc., 198 W.Va. 100, 479 S.E.2d 610 (1996)(The owner or occupant of premises owes to invited persons a duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition.) Plaintiff merely alleges that MCCC "houses WVDOC inmates, Regional Jail inmate, and County inmates." Plaintiff's conclusory allegation that Defendants WVDOC and Rubenstein owed him a duty of care because "McDowell County Correctional Center is not under contract with Defendant Jim Rubenstein nor the WVDOC" is insufficient. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949(quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1955)(Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions."Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ) West Virginia Code § 25-1-3(b) provides that "[t]he Commissioner of Corrections may contract with the County Commission of McDowell County to house and incarcerate inmates at the Stevens Correctional Center consistent with all requirements and standards governing the Division of Corrections." W.Va. Code § 25-1-3(b). The undersigned notes that Stevens Correctional Center

and McDowell County Correctional Center are owned and operated by the McDowell County Commission and the WVDOC contracts with the McDowell County Commission to house state inmates.[5] See Martin v. Bowman, 48 F.3d 1216, fn. 1 (4th Cir. 1995)(The McDowell County "Commission oversees the operation of the McDowell County Correctional Center.") Accordingly, the undersigned finds that Defendants WVDOC and Rubenstein's Motion to Dismiss should be granted as to Plaintiff's negligence claim.[6]

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendant Rubenstein and the West Virginia Division of Corrections' Motion to Dismiss (Document No. 15.), **GRANT in part and DENY in part** Defendants Jones-Fouche and Walker's Motion to Dismiss (Document No. 13.). Specifically, the undersigned recommends that the District Court **GRANT** Defendant Walker's Motion to Dismiss, **GRANT** Defendant Jones-Fouche's Motion to Dismiss concerning Plaintiff's medical negligence claim, and **DENY** Defendant Jones-Fouche's Motion to Dismiss concerning Plaintiff's deliberate indifference claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Senior United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule

[5] http://www.mcdowellcorrections.com/index.html

[6] The undersigned finds it unnecessary to address the merits of Defendants WVDOC and Rubenstein's argument of qualified immunity.

6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 5, 2014.

R. Clarke VanDervort
United States Magistrate Judge