**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **COURTNEY S. WALLACE, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:14-17900** |
| | ) | |
| **MCDOWELL COUNTY COMMISSION,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants McDowell County Commission and Dr. Kimberly

Jones' Motion for Summary Judgment (Document No. 40), filed on July 15, 2015. The Court

notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had

the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other

legal or factual material supporting his claims as they are challenged by the Defendants in moving

to dismiss. (Document No. 42.) Plaintiff filed his Response on July 31, 2015. (Document No. 44.)

Having examined the record and considered the applicable law, the undersigned has concluded that

Defendants McDowell County Commission and Dr. Jones' Motion for Summary Judgment

(Document No. 40) should be granted.

**PROCEDURAL BACKGROUND**

On June 9, 2014, Plaintiff filed his Complaint seeking relief pursuant to 42 U.S.C. § 1983.[1]

(Document No. 1.) In his Complaint, Plaintiff names the following as Defendants: (1) McDowell

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to
a less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

County Commission; (2) McDowell County Correctional Center; (3) Dennis Dingus, Warden of McDowell County Corrections; (4) Dr. Kimberly Jones; (5) Ms. April Walker, R.N; and (6) Jim Rubenstein, Commissioner of Corrections. (Document No. 1, p. 3.) Plaintiff alleges that Defendants acted with deliberate indifference in providing medical treatment for his back and hip injury and his heart condition. (Id., pp. 4 - 10.) Plaintiff claims that on April 4, 2013, he injured back and hip when he slipped in some milk that had been spilled on the floor at McDowell County Correctional Center ["MCCC"]. (Id., p. 5.) Plaintiff explains that his "right leg went out from under [him], causing [his] left hip to make a loud popping sound as pain traveled up [his] back and across [his] left hip and into [his] groin." (Id.) Plaintiff states that he "was able to catch [himself] on the block of the wall as otherwise [he] would have hit the floor." (Id.) Plaintiff claims that he informed Lt. Jackson of his injury and requested that an incident report be filed. (Id.) Plaintiff alleges that Officer Fowler told Lt. Jackson that "the spilled milk had been there all day." (Id.) Although Plaintiff acknowledges that Nurse Harris was called, Plaintiff complains that Nurse Harris failed to examine him. (Id.) Plaintiff states that Nurse Harris told him he had pulled a muscle, gave him three Tylenol, and instructed him to "put a sick call in to see a doctor." (Id.) Plaintiff then states that Lt. Jackson questioned him concerning his altered shoes. (Id., p. 6.) Plaintiff explains that due to swelling in his feet, the straps of his shoes continuously break. (Id.) Plaintiff states that he "did take some string and put it in place of the straps so that [his] feet would not break out of the shoes." (Id.)

Plaintiff states that he was questioned by Mrs. Cochran, Mrs. Bowman, and Mr. Cochran on April 5, 2013, concerning the incident and "who authorized [him] to wear the altered shoes." (Id.) Plaintiff explains he reported to Medical the same day "to get something for the pain and to see if [he] could be sent to the hospital and was told that [he] would be seeing the doctor the next day and

that they had [his] sick call form so they gave [him] three Tylenols and sent [him] back to his cell."
(Id.) Plaintiff was evaluated by Dr. Jones on April 6, 2013, who prescribed Tylenol three times a day.
(Id., p. 7.) Plaintiff alleges that he went back to Medical on April 7, 2013, due to pain "and was told
that Dr. Jones was aware of [his] situation and that if the pain continued that they would call the
doctor." (Id.) Plaintiff states that he was again evaluated by Dr. Jones on April 16, 2013, who
ordered an x-ray. (Id.) Plaintiff claims that he subsequently reported to Medical to get the results of
his x-ray, but Nurse Ross and Dr. Jones could not find the x-ray report. (Id.) Plaintiff states that Dr.
Jones then ordered that he be sent to the Welch Hospital for an x-ray. (Id.) Plaintiff acknowledges
that he was transported to the Welch Hospital and his x-ray was performed. (Id.) Plaintiff, however,
alleges that the doctor at Welch Hospital informed Plaintiff that he "could not take Tylenol or Motrin
the way [he] was taking it because it would mess-up [his] liver." (Id., pp. 7 - 8.) Plaintiff asserts that
the doctor prescribed Naproxen twice a day and informed Plaintiff that "he wanted to see [him] back
soon for more tests and x-rays after he talked to some other doctors." (Id., p. 7.) Plaintiff states that
he was never taken back for his follow-up. (Id.) Plaintiff further complains that when he reported to
Medical for his new medication, he was told "there was no order for any new medicine and that [he]
only had what Dr. Jones had ordered." (Id.) Plaintiff contends that Nurse Murphy told him that she
would "check on it for [him]." (Id.) Plaintiff complains that he did not receive his medication until
July 10, 2013, after having to file grievances. (Id.) Plaintiff explains that he ran out of Naproxen in
September, 2013, and he was given Tylenol when he requested a refill. (Id.) Plaintiff states that the
nurse informed him that the Naproxen was on order and Plaintiff should take Tylenol until the
Naproxen arrived. (Id.) Plaintiff alleges that due to his continuous pain, he was again evaluated by
Dr. Jones. (Id.) Plaintiff states that Dr. Jones "sent [him] back to see the Doctor at Welch Hospital

who checked [him] again and said that he wanted to see [him] back because it looked like [Plaintiff] might have a pinched nerve in [his] lower back." (Id., p. 9.) Plaintiff states that he has "never been taken back as of this day." (Id.)

Next, Plaintiff complains that Defendants provided inadequate treatment for his heart condition. (Id., pp. 10 - 11.) Plaintiff states that he had a heart attack on October 7, 2009, and that he continues to have sharp pains across his chest and down his left arm. (Id., p. 10.) Plaintiff acknowledges that Dr. Jones evaluated him concerning the above complaint and instructed him that he should be on medication. (Id.) Plaintiff acknowledges that an EKG was conducted when he reported chest pain. (Id.) Plaintiff states that he was examined by Dr. Jones in March, 2014, and "she said she was going to send [him] out to a heart doctor and the doctor about [his] back." (Id.) Plaintiff acknowledges that he was evaluated by the heart doctor on April, 2014, who informed Plaintiff that more tests were necessary. (Id.) Plaintiff complains that the additional tests have not been conducted. (Id.) As relief, Plaintiff requests to "be paid for all the mental stress and additional health problems this has caused [him], and to be moved to another Correctional Facility in a different county that is run by the West Virginia DOC, not a County Commission."[2] (Id., p. 11.)

By Order entered on June 10, 2014, the undersigned directed Plaintiff to either pay the filing and administrative fee totaling $400 or file an Application to Proceed *in Forma Pauperis*. (Document No. 3.) On June 17, 2014, Plaintiff filed his Application to Proceed *in Forma Pauperis*. (Document No. 4.) By Order entered on July 2, 2014, the undersigned granted Plaintiff's Application to Proceed *in Forma Pauperis* and ordered the Clerk to issue a Summons requiring Defendants to

---

[2] The Docket Sheet reveals that Plaintiff notified the Clerk's Office on August 31, 2015, that he had been released from custody and provided his updated address.

answer or otherwise respond to Plaintiff's claim. (Document No. 5.) On July 21, 2014, Plaintiff filed a Motion to Amend his Complaint. (Document No. 10.) Specifically, Plaintiff requests that the name of Defendant Dr. Kimberly Jones be amended to Dr. Kimberly Jones-Fouche. (Id.) By Order entered on July 23, 2014, the undersigned granted Plaintiff's Motion to Amend. (Document No. 11.)

On July 25, 2014, Defendants McDowell County Commission, McDowell County Correctional Center, and Dennis Dingus filed their Answer to Plaintiff's Complaint. (Document No. 12.) Also, on July 25, 2014, Defendants Jones-Fouche and Walker filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 13 and 14.) Defendants Jones-Fouche and Walker argued that Plaintiff's Complaint should be dismissed based upon the following: (1) "The Plaintiff's complaint must be dismissed because this Court lacks subject matter jurisdiction over Plaintiff's claims under the West Virginia Medical Professional Liability Act" (Document No. 14, pp. 4 - 6.); and (2) "The Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because the Plaintiff has not alleged facts sufficient to demonstrate a constitutional violation" (Id., pp. 7 - 10.)

Defendants West Virginia Division of Corrections ["WVDOC"] and Rubenstein filed their Motion to Dismiss and Memorandum in Support on July 25, 2014. (Document Nos. 15 and 16.) Defendants WVDOC and Rubenstein claimed that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff has not set forth sufficient facts to support a claim of a violation of his Eighth Amendment Constitutional Rights" (Document No. 16, pp. 3 - 6.); (2) "The Plaintiff cannot advance liability upon this Defendant under a theory of *respondeat superior*" (Id., pp. 6 - 7.); (3) "Because neither Defendant WVDOC nor Defendant Rubenstein own or operate the McDowell County Correctional Center, they owe no duty to the Plaintiff under the theory of premises liability" (Id., pp. 8 - 10.); and (4) Defendants are entitled to qualified immunity (Id., pp. 10 - 11.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 28, 2014, advising him of the right to file a response to the Defendants Jones-Fouche, Walker, Rubenstein, and WVDOC's Motions to Dismiss. (Document No. 18.) Plaintiff filed his Response in Opposition on August 11, 2014. (Document No. 19.) Defendants Rubenstein and WVDOC filed their Reply on August 20, 2014. (Document No. 21.) By Proposed Findings and Recommendation filed on November 5, 2014, the undersigned recommended that the District Court grant Defendant Rubenstein and the West Virginia Division of Corrections' Motion to Dismiss (Document No. 15), grant in part and deny in part Defendants Jones-Fouche and Walker's Motion to Dismiss (Document No. 13). (Document No. 23.) Specifically, the undersigned recommended that the District Court grant Defendant Walker's Motion to Dismiss, grant Defendant Jones-Fouche's Motion to Dismiss concerning Plaintiff's medical negligence claim, and deny Defendant Jones-Fouche's Motion to Dismiss concerning Plaintiff's deliberate indifference claim. (<u>Id.</u>) Plaintiff filed his Objections on November 26, 2014. (Document No. 26.) By Memorandum Opinion and Order entered on December 2, 2014, United States District Judge David A. Faber adopted the undersigned's above recommendation. (Document Nos. 27 and 28.)

On December 5, 2014, Defendant Jones-Fouche filed her Answer. (Document No. 30.) On March 10, 2015, the undersigned entered a Scheduling Order set forth deadlines for the completion of discovery and filing of dispositive motions. (Document No. 34.) On July 15, 2015, Defendants Jones-Fouche and McDowell County Commission ["MCC"] filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 40 - 41.) Defendants Jones-Fouche and MCC argue that Plaintiff's claims should be dismissed based upon the following: (1) "Plaintiff has produced no evidence to support his claims that Dr. Jones rendered inadequate medical care in

violation of the Eighth Amendment to the United States Constitution" (Document No. 41, pp. 5 - 9.); (2) "Summary judgment should be granted in favor of McDowell County Commission because there is no vicarious liability under 42 U.S.C. § 1983" (Id., pp. 9 - 11.); and (3) "To the extent that plaintiff has made a claim of negligence against the McDowell County Commission, summary judgment should be granted because the Commission has statutory immunity pursuant to W. Va. Code 29-12A-4(c)(4)" (Id., pp. 11 - 13.).

As Exhibits, Defendants attach the following: (1) A copy of "Respondents/Defendants, McDowell County Commission and Kimberly Jones', First Set of Interrogatories, Requests for Admissions and Request for Production of Documents to Plaintiff" (Document No. 40-1); (2) A copy of Plaintiff's Responses to Defendants' First Set of Interrogatories, Requests for Admissions, and Request for Production of Documents (Document No. 40-2); (3) A copy of Defendant Jones-Fouche's Affidavit (Document No. 40-3); and (4) A copy of Plaintiff's medical records (Document No. 46).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 16, 2015, advising him of the right to file a response to the Defendants Jones-Fouche and MCC's Motion for Summary Judgment. (Document No. 42.) Plaintiff filed his Response in Opposition on August 17, 2015. (Document No. 45.)

## FACTUAL HISTORY

Plaintiff's "Division of Corrections Inmate Screening" dated September 11, 2012, reveals that he had a known cardiac condition and hypertension. (Document No. 46, pp. 1 - 2, 10, 18 - 19.) Specifically, it was noted that Plaintiff suffered a heart attack in 2009. (Id., p. 18.) On September 11, 2012, the doctor ordered an EKG. (Id., p. 90.) An EKG was performed on October 16, 2012. (Id.,

pp. 35 and 91.) During his "Medical History and Screening" conducted at Stevens Correctional Center on January 17, 2013, Plaintiff again indicated that he had a known heart condition and experienced chest pains "every now & then." (Id., p. 42.) Plaintiff's "intake packet" was completed and it was noted that Plaintiff would be evaluated by Dr. Jones-Fouche. (Id., p. 83.) Plaintiff was evaluated by Dr. Jones-Fouche on January 27, 2013, and an EKG was ordered. (Id., p. 95.) An EKG was performed on January 30, 2013 and additional lab work was conduct on February 11, 2013. (Id., pp. 83 - 84.)

On April 4, 2013, Plaintiff was evaluated by LPN Harrison after Plaintiff fell in the hallway injuring his hip and groin area. (Id., p. 84.) LPN Harrison administered 650 mg Tylenol for the pain and instructed Plaintiff to submit a sick call to be evaluated by Dr. Jones-Fouche. (Id.) On April 5, 2013, Plaintiff reported to medical complaining of pain in his pelvic area. (Id.) Plaintiff was administered 975 mg of Tylenol and again advised to submit a sick call request to be evaluated by Dr. Jones-Fouche. (Id.) On the same day, Plaintiff submitted a Medical Services Request complaining that he "fell in the hallway from something being spilled on the floor and pulled something and my hip popped." (Id., p. 72.) On April 6, 2013, Plaintiff again reported to medical complaining of hip and back pain caused by his fall. (Id., p. 84.) Plaintiff was evaluated by Dr. Jones-Fouche on the same day. (Id., pp. 84, 86, and 95.) Dr. Jones-Fouche ordered x-rays, prescribed 600 mg of Motrin for pain, and ordered a bottom bunk pass. (Id.) The x-ray was preformed on April 9, 2013. (Id., p. 127.) The x-ray report stated that it was an "unremarkable lumbosacral spine x-ray exam." (Id.)

On April 22, 2013, Plaintiff reported to medical complaining of chest pain. (Id., p. 85.) LPN Collins noted that an EKG had been performed and the results revealed no "significant

abnormalities." (Id., p. 85.) Dr. Jones-Fouche ordered chest x-rays and directed that Plaintiff be placed in medical for 24 hours of observation. (Id.) The chest x-ray was conducted on April 23, 2013, which revealed "no acute cardiopulmonary disease." (Id., p. 128.) On April 25, 2013, Nurse Walker noted that Plaintiff has had no complaints of chest pain and will be moved back to General Population when a bed is available. (Id., p. 85)

On May 15, 2013, Plaintiff submitted a Medical Services Request requesting a follow-up appointment concerning his hip injury. (Id., p. 73.) LPN Ross referred Plaintiff to sick-call to be evaluated by Dr. Jones-Fouche. (Id.) On May 25, 2013, Dr. Jones-Fouche examined Plaintiff noting that he had pain with movement of his hip. (Id., p. 95.) Dr. Jones-Fouche ordered x-rays, prescribed 650 mg of Tylenol for pain, and referred Plaintiff to an orthopedist for evaluation. (Id.) Plaintiff was evaluated by an orthopedist, Dr. Chandra Sharma, on June 28, 2013. (Id., p. 58.) Dr. Jones-Fouche noted that Dr. Sharma ordered x-rays of Plaintiff's hip, prescribed Naprosyn 500 mgs, and directed a follow-up appointment in one week. (Id.) On September 13, 2013, Dr. Sharma renewed Plaintiff's prescription from Naprosyn 500 mg. (Id., p. 151.) Notes on the prescription reveal that the Naprosyn was ordered on September 13, 2013, and then re-ordered on October 9, 2013, because the medication was never received. (Id., p. 151.) On December 31, 2013, Plaintiff filed a Medical Services Request stating that he needed "to see the doctor for pain med for my back on a follow-up." (Id., p. 75.) Plaintiff was seen by Dr. Jones-Fouche on January 4, 2014. (Id.) Dr. Jones-Fouche renewed Plaintiff's prescription for Naproxen 500 mg. (Id., p. 98.)

On January 20, 2014, Plaintiff was evaluated by medical staff during a Chronic Care visit. (Id., pp. 59 - 61.) Plaintiff was evaluated by LPN Potter, who noted that Plaintiff's heart was regular with no murmur, gallop or rub. (Id., p. 59.) The medical notes reveal that an EKG was performed.

9

(Id.) LPN Potter requested a referral to cardiology noting that Plaintiff had a history of a prior heart attack, but no other risk factors. (Id., p. 61.) On April 29, 2014, Plaintiff was evaluated by Dr. Sandeep Vardan for coronary artery disease, dyspnea, hyperlipidemia, and hypertension. (Id., pp. 64 - 65.) Dr. Vardan examined Plaintiff noting that his heart had a murmur, but a regular rhythm with no gallops, no clicks, no rubs, and no heaves. (Id., p. 65.) Dr. Vardan determined that Plaintiff had chronic stable angina, a heart murmur, hyperlipidemina, hypertension, and edema. (Id.) Dr. Vardan advised Plaintiff to engage in low impact aerobic exercise, a low fat and low cholesterol diet, a low salt and low calorie diet, and to keep feet elevated while seated. (Id.) Dr. Vardan recommended an echocardiogram to check Plaintiff's heart murmur and the continuation of Lasix and Cozaar. (Id.) Dr. Vardan also prescribed Lipitor 10 mg and instructed Plaintiff to follow-up in four months. (Id., pp. 65 and 100.) On the same day, Dr. Jones-Fouche completed a referral regarding Plaintiff's four month follow-up appointment with Dr. Vardan. (Id., p. 62.) An EKG was conducted, which revealed "sinus rhythm, slight intraventricular conduction delay, and ECG without significant abnormalities." (Id., p. 132.) On May 23, 2014, Dr. Jones-Fouche renewed Plaintiff's prescriptions for Cozaar and Naproxen. (Id., p. 102.) Based on Plaintiff's EKG results and continued complaint of chest pain, Dr. Vardan ordered a Pharmacologic Stress Test. (Id., p. 142.) The Pharmacologic Stress Test was conducted at Princeton Community Hospital on June 5, 2014. (Id.) The Stress Test revealed the following: "EKG response to Lexiscan infusion was unremarkable and negative for ischemia" and "chest pain or pressure after Lexiscan infusion is a nonspecific response." (Id., p. 142.) The Nuclear Medicine Report stated that Plaintiff's results "may suggest nontransmural inferior apical infarct," "mild reversibility of anterior wall of left ventriole suggesting mild anterior wall ischemia," "infarct pattern was not seen," "calculates LV ejection fraction was normal in resting imaging and in post

stress imaging calculated LV ejection fraction was 45% (mildly decreased in post stress imaging compared with resting imaging)." (Id., p. 143.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.    Eighth Amendment:**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir.

11

1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*,

we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his

13

Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. <u>See</u> <u>Farmer</u>, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

### A.   No Evidence of Deliberate Indifference Regarding Pain Medications and the Scheduling of a Follow-Up Appointment with an "Outside" Orthopedic.

Plaintiff alleges that Defendant Jones-Fouche acted with deliberate indifference to his back and hip pain by failing to provide him with prescribed medication and a follow-up appointment with an outside physician. For purposes of considering Defendants' Motion, the undersigned will assume that Plaintiff's medical condition is serious enough to give rise to an Eighth Amendment claim. Plaintiff, however, cannot satisfy the subjective component. The Court finds that Defendant Jones-Fouche did not act with deliberate indifference in providing medical treatment for Plaintiff's back and hip injury. The record reveals that Defendant Jones-Fouche evaluated Plaintiff and provided treatment following each sick-call request. Defendant Jones-Fouche consistently evaluated Plaintiff's condition, ordered x-rays, and prescribed pain medication, and issued a bottom bunk restriction. Defendant Jones-Fouche further referred Plaintiff to an "outside" orthopedist (Dr. Sharma), who prescribed Naprosyn for pain. Although it appears that Plaintiff as was not returned to Dr. Sharma

14

for his recommended follow-up appointment, there is no evidence that Defendant Jones-Fouche knowingly disregarded Plaintiff's need for a follow-up appointment. The record contains no evidence that Plaintiff informed Defendant Jones-Fouche that the follow-up appointment had not occurred and Defendant Jones-Fouche deliberately failed to schedule such a follow-up appointment with Dr. Sharma. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff acknowledges in his discovery responses that he can not say that Defendant Jones-Fouche caused him harm "on purpose" or "set out to cause [him] harm." (Document No. 40-2, pp. 5 - 6.) Furthermore, the record contains no evidence supporting Plaintiff's claim that Dr. Sharma was concerned about a pinched nerve in Plaintiff's lower back. Even assuming Dr. Sharma was concerned about a possible pinched nerve, the mere difference of opinions by physicians does not establish deliberate indifference. Vanderhart v. Felts, 2012 WL 727647, * 13 (S.D.W.Va. Feb. 15, 2012); also see Thomas v. O'Haver, 142 F.3d 440, * 4 (7th Cir. 1998)(unpublished opinion)("Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment is appropriate at all, but a disagreement in treatment alone will not support a constitutional violation."); Hanson v. Smith, 9 F.3d 1557, * 2 (10th Cir. 1993)(unpublished opinion)("Even should medical opinions differ among prison doctors, such a difference of opinion does not support a claim of cruel and unusual punishment."); Cerilli v. Rell, 2010 WL 3827960, * 6 (D.Conn. Sept. 23, 2010)("Physicians can and do differ in their diagnoses and their determinations of the appropriate treatment for a particular patient, and the mere existence of a difference of opinion does not establish a claim of deliberate indifference."); Cole v. Goord, 2009 WL 1181295, * 8 n. 9 (S.D.N.Y. Apr. 30, 2009)(Plaintiff's "reliance upon the fact that subsequent medical providers have provided him with

a different course of medication or treatment . . . does nothing to establish that [defendant] violated [Plaintiff's] Eighth Amendment rights.")

The record reveals that Plaintiff's main complaint concerned the substitution of Tylenol for Naprosyn. The record reveals that the Naprosyn was ordered by medical staff at Stevens Correctional Center, but the medication was not received and had to be reordered. (Document No. 46, p. 151.) In her Affidavit, Defendant Jones-Fouche states that Naprosyn is a "non-narcotic pain medication similar to ibuprofen." (Document No. 40-3.) Defendant Jones-Fouche further states that Plaintiff "was provided with Tylenol which is a reasonable substitute for Naprosyn." (Id.) Additionally, the record reveals that Defendant Jones-Fouche subsequently prescribed Naproxen[3] for Plaintiff's pain. (Document No. 46, pp. 98 and 102.) Thus, the record establishes that Defendant Jones-Fouche made adequate efforts to treat Plaintiff's injury. At most, Defendant Jones-Fouche may have been negligent in failing to schedule a follow-up appointment with Dr. Sharma and by substituting Tylenol for Naprosyn. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Finally, an inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb

---

[3]  Naproxen is the generic form of Naprosyn.

v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551

F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and

"Defendants' decision to provide plaintiff with one medication over another does not give rise to a

constitutional violation.") Accordingly, the undersigned finds that Defendant Jones-Fouche did not

act with deliberate indifference in providing medical treatment for Plaintiff's back and hip injury.

### B.     No Evidence of Deliberate Indifference Regarding Medical Treatment for Heart Condition.

Plaintiff alleges that Defendant Jones-Fouche acted with deliberate indifference in providing

medical treatment for his heart condition. For purposes of considering Defendants' Motion, the

undersigned will assume that Plaintiff's medical condition is serious enough to give rise to an Eighth

Amendment claim. Plaintiff, however, cannot satisfy the subjective component. The Court finds that

Defendant Jones-Fouche did not act with deliberate indifference in providing medical treatment for

Plaintiff's heart condition. The record reveals that Defendant Jones-Fouche evaluated Plaintiff and

provided treatment following each sick-call request. Defendant Jones-Fouche consistently evaluated

Plaintiff's condition, ordered a chest x-ray, ordered EKGs, prescribed medication, and referred him

to an "outside" cardiologist. Plaintiff, however, complains that Dr. Vardan determined that additional

tests were necessary and Defendant Jones-Fouche failed to ensure that the additional tests were

performed. The record reveals Plaintiff was evaluated by Dr. Vardan on April 29, 2014. (Document

No. 46, pp. 64 - 65.) Dr. Vardan recommended that an additional EKG be performed and instructed

Plaintiff to follow-up in four months. On the same day as his appointment with Dr. Vardan,

Defendant Jones-Fouche completed the referral regarding Plaintiff's four month follow-up

appointment with Dr. Vardan. (Document No. 46, p. 62.) Plaintiff's follow-up appointment with Dr.

Vardan was scheduled for August 26, 2014. (Id.) The record reveals that on June 5, 2014, a Pharmacologic Stress Test was performed and a Nuclear Medicine Report was completed as ordered by Dr. Vardan. (Id., pp. 142 - 43.) Although Plaintiff contends that Defendant Jones-Fouche failed to ensure that Plaintiff received the additional tests ordered by Dr. Vardan, the record reveals that such tests were conducted. There is no evidence that Defendant Jones-Fouche knowingly disregarded Plaintiff's need for additional cardiological testing.  The record reveals that Defendant Jones-Fouche provided adequate medical treatment and testing concerning Plaintiff's heart condition. Plaintiff merely appears to disagree with the medical treatment provided by Defendant Jones-Fouche. As stated above, an inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright, 766 F.2d at 849. Furthermore, an inmate's treatment may be properly limited to "what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb, 2010 WL 3812354, at * 1 - 2. Accordingly, the undersigned finds that Defendant Jones-Fouche did not act with deliberate indifference in providing medical treatment for Plaintiff's heart condition.

2.    **Constitutional Claim Against McDowell County Commission:**

Defendant MCC argues that it is entitled to summary judgment because there is no vicarious liability under Section 1983. (Document No. 41, pp. 9 - 11.) Defendant MCC contends that Plaintiff "has not alleged that Defendant Dr. Kimberly Jones engaged in any unconstitutional conduct that raises a plausible claim of liability under § 1983 against the Commission." (Id., p. 9.) Additionally, Defendant MCC states that "plaintiff has failed to develop any evidence to suggest that the Commission itself took part in, or was aware of, any alleged constitutional violations." (Id.) Defendant MCC, therefore, argues that Plaintiff cannot establish that MCC is liable for the actions

18

of Defendant Jones-Fouche pursuant to a Section 1983 claim. (<u>Id.</u>)

In Response, Plaintiff argues that MCC "is liable for any and all issues dealing with safety and welfare of any and all staff, inmate or visitor of either facility namely Stevens's Correctional Center or McDowell Correctional Center of Welch, West Virginia. (Document No. 45, p. 3.) Plaintiff explains that MCC "is the sole owner and operator of said property and therefore is responsible for the safety of all persons who are on or within the facility." (<u>Id.</u>, p. 4.)

Municipalities are "persons" subject to suit under Section 1983. <u>Monell v. Dept. of Social Services,</u> 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); <u>also see</u> <u>Gilco v. Logan County Commission</u>, 2012 WL 3580056, * 6 (S.D.W.Va. Aug. 17, 2012)(J. Copenhaver)("Municipalities, such as the County Commission, are 'persons' subject to suit under section 1983.") A municipality, however, "can be found liable § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)(emphasis in original). To prove that a municipality itself is responsible for a constitutional violation, a plaintiff is required to "identify a municipal policy or custom that caused the plaintiff's injury." <u>Board of County Commissioners of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 403-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)("Locating a 'policy' ensure that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.") The plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the

deprivation of federal rights." Id. Thus, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). A municipality may be held liability for a policy or custom based on the following: (1) an express policy, such as a written ordinance or regulation; (2) the decisions of a person with final policymaking authority; (3) an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens;" or (4) a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)(citing Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999); also see Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)(A practice may be attributed to a local government if the duration and frequency of the practice rises to a level so that the governing body may be deemed to have constructive knowledge that the practices have become customary among its employees).

The undersigned has thoroughly reviewed Plaintiff's Complaint and finds no specific allegation against MCC. Plaintiff does not allege that a policy or custom of MCC caused his injury. Plaintiff claims that MCC is responsible for the allegedly inadequate or delayed medical treatment provided by Defendant Jones-Fouche because MCC owns and operates the McDowell County Correctional Center. (Document No. 1.) The undersigned finds no allegation or evidence that MCC was aware of an unreasonable risk of harm or misconduct by Defendant Jones-Fouche and failed to take corrective action. As explained above, MCC cannot be found liable under Section 1983 based upon *respondeat superior*. Accordingly, the undersigned recommends that Defendant MCC's Motion for Summary Judgment be granted as to Plaintiff's constitutional claims.

20

3. **Negligence Claim Against Dr. Jones and McDowell County Commission:**

Defendants argues that "Plaintiff has not expressly stated a cause of action for negligence against either Dr. Jones or the McDowell County Commission." (Document No. 41, p. 11.) First, Defendant Jones-Fouche notes that Plaintiff fails to state "any direct or circumstantial link between the slip and fall incident and Dr. Jones." (Id., p. 12.) Second, Defendants claim that "[t]o the extent that plaintiff has made a claim of negligence against the McDowell County Commission, summary judgment should be granted because the Commission has statutory immunity pursuant to W. Va. Code 29-12A-4(c)(4)." (Id., p. 12.)

In Response, Plaintiff states that he was injured after stepping in spilled milk that was on the floor at Stevens Correctional Center. (Document No. 45.) Plaintiff argues that MCC "is the sole owner and operator of said property and therefore is responsible for the safety of all person[s] who are on or within the facility." (Id.)

The undersigned first finds that Plaintiff has failed to state a negligence claim against Defendant Jones-Fouche concerning his slip and fall. There must be evidence of the alleged negligence, i.e., that Defendant Jones-Fouche owed Plaintiff a duty to take care and breached it through some act, or omission to act, as should have been reasonably expected to result in Plaintiff's fall and produce Plaintiff's injury thereby causing his fall and injury. In other words, Plaintiff must point to facts which indicate that Defendant Jones-Fouche's negligence was the proximate cause of his fall and injury. See Judy v. Grant County Health Dep't, 210 W.Va. 286, 291 - 92, 557 S.E.2d 340, 345 - 46 (2001). In the instant case, Plaintiff does not claim that Defendant Jones-Fouche was responsible in any way for his slip and fall. Accordingly, the undersigned recommends that Defendant Jones-Fouche's Motion for Summary Judgment be granted as to the foregoing.

To the extent Plaintiff is alleging that Defendant MCC was negligence concerning his slip and fall, the undersigned finds his claim to be without merit. West Virginia Code 29-12A-4(c)(4) provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility." Plaintiff clearly alleges that he slipped and fell as a result of stepping in spilled milk at Stevens Correctional Center. Accordingly, Defendant MCC is immune from liability pursuant to W. Va. Code § 29-12A-4(c)(4). The undersigned, therefore, recommends that Plaintiff's negligence claim against Defendant MCC be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants McDowell County Commission and Defendant Jones-Fouche's Motion for Summary Judgment (Document No. 40), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 10.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

22

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: September 16, 2015.

R. Clarke VanDervort
United States Magistrate Judge